IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INDICTMENT |
| v. | : | NO. 2:12-CR-022-RWS-JCF |
| | : | |
| DAVEY HONEYCUTT, THOMAS | : | |
| COLEY, PHILLIP HONEYCUTT, and | : | |
| PHILLIP ALEXANDER, | : | |

## NON-FINAL REPORT AND RECOMMENDATION

This case is before the Court on the Motions to Dismiss Indictment filed by Defendants Thomas Coley (Doc. 70), Phillip Alexander (Doc. 73), Davey Honeycutt (Doc. 88), and adopted by Phillip Honeycutt (Doc. 103).[1] Defendants move to dismiss the Indictment "on the grounds that the government's over-involvement in the events said to constitute crimes violate[d their] due process rights." They also request that the Court conduct a hearing on their motions. Because Defendants have not shown that the governmental involvement here was so outrageous that dismissal would be justified, it is **RECOMMENDED** that Defendants' motion be **DENIED** without a hearing.

---

[1] It does not appear that Defendant Brendan Musser filed a motion to dismiss or adopted his co-defendants' motions to dismiss.

1

## Background

An Indictment filed August 14, 2012 (Doc. 1) charges Defendants Davey Honeycutt, Brandon Musser, Thomas Coley, and Phillip Honeycutt with conspiracy to aid and abet, and/or aiding and abetting "Michael Griffin, a/k/a Griff," in the possession of cocaine with the intent to distribute from February 28, 2012 until March 1, 2012. (Count One). Count Two charges that Defendants Davey and Phillip Honeycutt, Musser, and Coley, aided and abetted by each other, aided and abetted Griffin in attempting to possess cocaine with intent to distribute on March 1, 2012. Count Three charges that Defendants Musser, Phillip Honeycutt, and Alexander, aided and abetted by each other, aided and abetted Griffin in attempting to possess cocaine with the intent to distribute on July 11, 2012. Count Four charges that Defendant Coley aided and abetted Griffin in attempting to possess cocaine with intent to distribute on July 19, 2012. Count Five charges Defendant Davey Honeycutt with being a convicted felon in possession of a firearm on January 4, 2012.

The Government represents that these charges resulted from "a two year undercover investigation conducted by the FBI into the criminal activities of the Outlaw Motorcycle Club (OMC) and its affiliated gangs in North Georgia." (Doc. 116, Gov't Resp. at 2). The Government further states that "[t]he indictments,

discovery, and proffers by the Government at the Defendants' detention hearings have revealed the following information about the undercover investigation":

> The FBI, through the use of an undercover agent and cooperating individuals, developed evidence that members and persons associated with the OMC and its affiliates were involved in illegal drug and firearms trafficking which led to multiple indictments.
> Brad Smith ["Smith"], the then-President of the Black Pistons Motorcycle Club's Cleveland, Georgia chapter, an OMC-affiliated gang, was working as an FBI confidential informant. Smith introduced an undercover law enforcement officer ["Griff" or "Griffin"] to the motorcycle gang community in North Georgia. Griff posed as Smith's long-time friend and a big time drug dealer from Florida who was looking to expand his drug trafficking business into North Georgia and Tennessee. The FBI's investigation included using Smith and Griff to record conversations with targets concerning their criminal activities; Griff purchasing and attempting to purchase illegal drugs, including methamphetamine, marijuana and LSD; and Griff paying members and persons associated with the OMC and its affiliates to provide protection for both real and sham drug deals.

(*Id.* at 2-3).

On September 14, 2012, Defendants Coley and Alexander filed the pending motions to dismiss (Doc. 70, 73); Defendant Davey Honeycutt filed his motion on September 19, 2012 (Doc. 88), and Defendant Phillip Honeycutt adopted that motion September 21, 2012 (Doc. 103). The Government filed a consolidated response to those motions on October 8, 2012 (Doc. 116); Defendant Coley filed a reply on October 10, 2012 (Doc. 117), and Defendants Davey Honeycutt and Alexander filed replies on October 16, 2012 (Docs. 119, 120). Briefing is now complete, and the Court turns to the merits of Defendants' motions.

## Discussion

Defendants argue that "[w]hen involvement by federal agents in the commission of a crime is so outrageous as to shock the conscience, either due process or the Court's supervisory powers will preclude prosecution." (*See* Doc. 70 at 4; Doc. 73 at 4; Doc. 88 at 4; Doc. 103 at 4).[2] They seek dismissal of the indictment by invoking a defense that has been recognized, but apparently never applied within this Circuit. In *United States v. Haimowitz*, 725 F.2d 1561 (11th Cir. 1984), the court wrote, "In *United States v. Russell*, 411 U.S. 423 [] (1973), the Supreme Court recognized outrageous governmental conduct as a legal defense." 725 F.2d 1561, 1577 (11th Cir. 1984). In *Russell*, the Court explained, "While we may *some day* be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, the

---

[2] Defendants also contend that Defendants could not have been in a conspiracy with a government agent, citing *United States v. Arbane*, 446 F.3d 1223 (11th Cir. 2006), and refer to that as an "insurmountable defect," presumably in the indictment. (*See* Doc. 70 at 3; Doc. 73 at 3; Doc. 88 at 3-4; Doc. 103 at 3-4). That argument is not developed, and does not appear to be Defendants' basis for seeking dismissal of the indictment in these motions. Furthermore, the court in *Arbane* stated "[i]f there are *only two members of a conspiracy*, neither may be a government agent or informant who aims to frustrate the conspiracy." 446 F.3d at 1228 (emphasis added). But in this case, there are more than two charged members of the conspiracy, and as the Government points out (*see* Doc. 116, Gov't Resp. at 7 n. 4), Count One charges that Defendants conspired *with each other* to aid and abet a government agent; it does not charge Defendants solely with conspiring with a government agent. Therefore, *Arbane* is inapplicable.

instant case is distinctly not of that breed." *United States v. Russell*, 411 U.S. 423, 431-32 (1973)(emphasis added). The Court found that the government agent's conduct in that case, supplying the defendant with materials to make methamphetamine, "stop[ped] short of violating that fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment." *Id.* at 432 (quotation omitted). Therefore, while the Supreme Court in *Russell* left open the possibility that an outrageous governmental conduct defense might be recognized *some day*, it did not apply such a defense in that case.

Within this Circuit more recently, in *United States v. Jayyousi*, 657 F.3d 1085 (11th Cir. 2011), the court explained that the Eleventh Circuit had "never applied the outrageous government conduct defense and ha[d] discussed it only in dicta," and pointed out that several other circuits "have either rejected this defense completely" or "have been sharply critical of the defense," thus casting doubt on its continued viability. *Id.* at 1111; *see also United States v. Galvis-Pena*, No. 1:09-CR-25-TCB-CCH-4, 2011 U.S. Dist. LEXIS 153045, at *32-33 (N.D. Ga. Dec. 6, 2011) ("Indeed, the Eleventh Circuit has never found that a case should have been dismissed on the ground of outrageous governmental conduct." (citing Donald F. Samuel, *Eleventh Circuit Criminal Handbook* § 87 at 4-7 (2011 Ed.)

5

(claim may at least still be "theoretically possible")), *adopted by* 2012 U.S. Dist. LEXIS 16239 (N.D. Ga. Feb. 9, 2012).

"To succeed under this defense, the defendant must show that the challenged governmental conduct violated that fundamental fairness, shocking to the universal sense of justice, mandated by the due process clause of the fifth amendment." *Haimowitz*, 725 F.2d at 1577 (quotation omitted)). "Whether outrageous governmental conduct exists turns upon the totality of the circumstances with no single factor controlling[,] and the defense can only be invoked in the rarest and most outrageous circumstances." *Id.* (quotations omitted). "Although federal courts possess the authority to dismiss an indictment for governmental misconduct, dismissal is an extreme sanction which should be infrequently utilized[, and d]ismissal is only favored in the most egregious cases." *United States v. Michael*, 17 F.3d 1383, 1386 (11th Cir. 1994) (quotations omitted).

Defendants contend that sufficient outrageousness to warrant dismissal of the indictment can be shown where "the Government instigates the criminal activity, provides the entire means for its execution, and runs the operation with only meager assistance from the defendant," which, they argue "perfectly describes [Defendants'] alleged involvement in this case." (*See* Doc. 70 at 5; Doc. 73 at 4; Doc. 88 at 4-5; Doc. 103 at 4-5). Defendants allege that they were recruited by an FBI informant, Brad Smith, to assist Michael Griffin, an undercover FBI agent, to

6

provide security for transactions involving no actual sale or purchase of cocaine. (*See* Doc. 70 at 2; Doc. 73 at 2; Doc. 88 at 2; Doc. 103 at 2). They deny that they were "looking for an opportunity or otherwise predisposed to commit any crime," and contend that the Government was so involved in the underlying events "that there would be no criminally actionable conduct but for the acts of the Government agents." (Doc. 70 at 3; Doc. 73 at 3-4; Doc. 88 at 4; Doc. 103 at 4).

The Government counters that it "merely provided the Defendants with a routine criminal opportunity of which the Defendants were more than willing to take advantage," and argues that "based on the totality of the circumstances, the Government's law enforcement techniques . . . do not approach that demonstrable level of outrageousness that would be necessary to warrant dismissal of [the Indictment]." (Doc. 18, Gov't Resp. at 20). Specifically, the Government proffers the following as to each Defendant's involvement in the crimes charged in the Indictment:

With respect to Defendants Davey Honeycutt and Phillip Honeycutt, the Government asserts that Defendant Musser approached Griffin about doing some work involving narcotics trafficking, and Griffin asked Musser to put together a group of people to assist them. (Doc. 116, Gov't Resp. at 18). According to the Government, "Defendant Musser told Griff that he would ask a few people, including [among others] Defendants Davey Honeycutt and Phillip Honeycutt, if

7

they wanted to help out." (*Id.*). Thus, the Government asserts, "the Government did not even select Defendants Davey Honeycutt and Phillip Honeycutt to participate in the initial March 1, 2012 transactions (Counts 1-2) or select Defendant Phillip Honeycutt to participate in the July 11, 2012 transaction (Count 3) – Defendant Musser did." (*Id.*).

With respect to Defendant Coley's alleged involvement in the March 1, 2012 transaction underpinning Counts One and Two, the Government asserts that Griffin and Coley had "exchanged text messages about whether Defendant Coley had any marijuana and/or LSD to sell." (*Id.*). Griffin "texted Coley to ask him if he was interested in participating in a job," to which Coley responded, "Yes!! What time?" (*Id.*). Furthermore, according to the Government, when Griffin "later presented an identical protection opportunity to Defendant Coley for the July 11, 2012 transaction (Count 4), Coley willingly accepted." (*Id.* at 19). The Government contends that Coley had already "established he was a predisposed active participant in drug trafficking activities, and was looking to make some money from future drug trafficking activities," as evidenced by Coley's actions in the six months prior to the March 1, 2012 transaction, including providing protection for Griffin at a drug negotiation for money; offering to introduce Griffin to marijuana dealers or broker marijuana transactions; advising Griffin about sources of marijuana and LSD, for which he was paid money; and arranging and

8

participating in a meeting between Griffin and a supplier of marijuana and LSD, for which he was paid money. (*Id.* at 18-19).

With respect to Defendant Alexander's participation in the July 11, 2012 transaction set out in Count Four, the Government asserts that Griffin "texted him to ask if he was interested in participating in a job," and Alexander responded that he was, and by that point, Alexander had "already established that he was a predisposed active participant in drug trafficking by providing protection for Griff at four separate negotiations and/or purchases of methamphetamine from Gainesville area drug dealers from June 2011 to September 2011." (*Id.* at 19-20).

Finally, with respect to Count Five of the Indictment, the Government asserts that Defendant Davey Honeycutt "approached Smith in late December 2011 and asked if he thought Griff would be interested in buying [his friend Campbell's] guns because Campbell needed money." (*Id.* at 20). Griffin called Honeycutt, and they agreed on a sale price for certain guns and ammunition. (*Id.* at 21). Campbell brought the guns to the agreed upon location and gave them to Defendant Davey Honeycutt; Griffin texted Honeycutt and told him to put the guns in the trunk of a car, which he did. (*Id.*).

The undersigned finds the challenged governmental conduct does not rise to the level of offending notions of fundamental fairness and is not shocking to the universal sense of justice, and therefore it does not violate Defendant's Fifth

9

Amendment due process rights. "[G]overnment infiltration of criminal activity is a recognized and permissible means of investigation, even though the government agent supplies something of value to the criminal." *United States v. Tobias*, 662 F.2d 381, 386 (5th Cir. 1981)[3] (internal quotations omitted). In particular, "[w]here the government is investigating offenses involving illegal drugs, it often must engage in undercover operations because it is very difficult to discover the contraband. This activity by the government does not generally constitute outrageous conduct." *United States v. Lopez-Cruz*, 170 Fed. Appx. 634, 636 (11th Cir. 2006) (unpublished decision); *see also United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998) ("The fact that government agents may supply or sell illegal drugs or provide other essential services does not necessarily constitute misconduct."). Furthermore, "[w]here the government merely presents a defendant with a routine criminal opportunity of which the defendant is more than willing to take advantage, the government's actions do not amount to outrageous conduct warranting dismissal." *United States v. Rolon*, 445 Fed. Appx. 314, 322 (11th Cir. 2011) (unpublished decision).

A closer look at one leading case illustrates how remarkably difficult it is to show that government misconduct is outrageous enough to justify dismissal. In

---

[3] Decisions of the Fifth Circuit handed down before Oct. 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

10

*Tobias*, Drug Enforcement Administration ("DEA") agents established a chemical supply company; agents placed an advertisement in High Times Magazine offering to sell chemicals and laboratory equipment to manufacture drugs; agents recommended to the defendant that he make Phencyclidene (PCP) because it was easier to make than cocaine; agents gave the defendant the formula and some of the chemicals necessary to make the drug; and agents provided ongoing advice on how to make PCP. *Tobias,* 662 F.2d at 383-84. The court found that the government conduct in that case "set[s] the outer limits to which the government may go in the quest to ferret out and prosecute crimes in this circuit," yet because the defendant "was a predisposed active participant, motivated solely by a desire to make money," the court found that the conduct was not so outrageous to constitute a due process violation. *Id.* at 387.

In this case, Defendants have not demonstrated that Government agents coerced, pressured, or misled Defendants to engage in criminal activity in which they were not otherwise predisposed to engage, nor have they otherwise shown that the governmental conduct was so outrageous that it violated their due process rights. As described above, the Government has proffered that, prior to the transactions at issue in the Indictment, Defendants were allegedly involved in activities showing that they were willing to engage in drug-related transactions,

11

including arranging and/or securing transactions, and that they agreed to participate in the transactions alleged in the Indictment.

Furthermore, Defendants have not shown that they are entitled to a hearing on their motions. "[W]ithout sufficient factual allegations to support an outrageous-governmental-conduct defense, the Court need not hold an evidentiary hearing on the issue." *Galvis-Pena*, 2012 U.S. Dist. LEXIS 16239, at *16 (citing *United States v. Holloway*, 778 F.2d 653, 658 (11th Cir. 1985). Moreover, Defendants' contentions about the agents' conduct in this case "raise questions that are intermeshed with questions going to the merits of the case because they would require proof of the criminal conduct alleged in the indictment," and therefore, "they are not capable of resolution without a 'trial of the general issue' under FED. R. CRIM. P. 12(b)(2)." *Id.*[4] Thus, a pretrial evidentiary hearing on Defendants' motions would be inappropriate. *See, e.g. id.* at *15-16 (finding that magistrate judge properly denied the defendant's request for an evidentiary hearing on his motion to dismiss for outrageous governmental conduct because he had not made a sufficient showing of outrageousness to warrant a hearing, and a hearing would

---

[4] Rule 12(b)(2) provides that "[a] party may raise by *pretrial* motion any defense, objection, or request that the court can determine *without a trial of the general issue*." FED. R. CRIM. P. 12(b)(2) (emphasis added). As the court pointed out in *Galvis-Pena*, because "the issue of outrageous governmental conduct remains a question of law for the Court to decide," Defendants "will be permitted to move for dismissal *at trial* should the evidence establish this defense." 2012 U.S. Dist. LEXIS 16239, at *17 n. 6 (emphasis added).

require a "trial of the general issue," i.e., proof of the underlying criminal conduct alleged in the indictment).

Accordingly, it is **RECOMMENDED** that Defendants' motions to dismiss the Indictment (Docs. 70, 73, 88, 103) be **DENIED** without a hearing.

**IT IS SO REPORTED AND RECOMMENDED** this  3rd  day of December, 2012.

_____
J. CLAY FULLER
United States Magistrate Judge